UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ERIC DEARDORFF                                                                                    PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:06CV-63-S

LOUISVILLE/JEFFERSON COUNTY                                             DEFENDANTS
METRO GOVERNMENT, et al.

### MEMORANDUM OPINION

This matter is before the court on the motion of the defendant, Louisville/Jefferson Metro County Government ("Louisville Metro"), to dismiss the plaintiff's complaint pursuant to Fed. R. Civ P. 12(b)(6). When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).

### BACKGROUND

On February 6, 2005, the plaintiff, Eric Deardorff ("Deardorff"), an animal rights activist and supporter of People for Ethical Treatment of Animals (PETA), and another person, Joe Hinkle ("Hinkle"), went to 920 Blakenbaker Parkway ("Blakenbaker") in Louisville, Kentucky intending to demonstrate in front of Southeast Christian Church ("Southeast") against the alleged animal abuse by Kentucky Fried Chicken, a division of Yum! Brands, Inc. ("Yum!"). Deardorff believed that Yum! executives attended Southeast and wanted these executives to see his protest.

After Deardorff and Hinkle took up position on a sidewalk on the west side of Blankenbaker, they were approached by Louisville Metro Police Officer and defendant Victor Baker ("Baker"). Baker advised Deardorff and Hinkle that they were not allowed to protest at their

chosen location, because they did not have a permit. He told Deardorff and Hinkle that they would have to move to the east side of Blankenbaker.

When Deardorff and Hinkle responded that they were on public property and had a constitutional right to be there, Baker contacted someone at Southeast who informed him that protesters required a permit to demonstrate on the west side of Blankenbaker and that an agreement to this effect had been reached with previous protesters. Following Baker's reiteration to Deardorff and Hinkle that they needed a permit, Deardorff and Hinkle relocated to the east side of Blakenbaker. Baker made no express threat of arrest or other consequences.

Following this incident, Deardorff filed the case *sub judice* against Louisville Metro and Baker asserting four causes of action under 42 U.S.C. § 1983:

　　Count I:　　Supression of Free Speech
　　Count II:　　Establishment of Religion
　　Count III:　　Unreasonable Seizure
　　Count IV:　　Municipal Liability

We now examine whether Deardorff has sufficiently made out his §1983 claim to survive Louisville Metro's motion to dismiss.

## ANALYSIS

A plaintiff need only make two allegations to state a claim for relief under § 1983: (1) that the defendant acted under color of state law; and (2) that the defendant's conduct deprived him of a federal right. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Cassady v.Tackett*, 938 F.2d 693, 695 (6th Cir. 1991). Louisville Metro argues that Deardorff's complaint fails to meet either element. We disagree with Louisville Metro as to the first element but agree regarding the second.

In his complaint, Deardorff directly alleged that "[a]t all times relevant to this action, Defendant Baker acted under color of state law." Although Louisville Metro is correct that this statement alone is a mere legal conclusion that we need not accept as true, Deardorff also

identified Baker as an officer with the Louisville Metro Police Department. We believe this is a sufficient factual assertion to support Deardorff's allegation that Baker was acting under color of state law. *Cf. Elliott v. United States Dep't of Housing & Urban Development*, 43 Fed.Appx. 795, 796 (upholding the district court's dismissal of appellant's § 1983 complaint for failure to state a claim upon which relief may be granted, because the complaint did not "state who the man was the entered the apartment" and did not "allege that he was acting under color of state law."). Furthermore, there is nothing to support Louisville Metro's argument that to have properly alleged that Baker was acting under color of state law Deardorff must have stated that Baker was in uniform, identified himself as an officer, or threatened to make an arrest. We reject this argument.

Deardorff, however, has only satisfied one-half the inquiry. He must still have sufficiently alleged that Baker's conduct deprived him of a federal right.

### Count I

Count I alleges suppression of Deardorff's free speech. The government need not directly prohibit speech in order to violate the First Amendment. It need only act in a way that results in a chilling of speech. *See McBride v. Village of Michiana*, 30 F.3d 133, 1994 WL 396143, *4 (6th Cir. July 28, 1994) (citing *Laird v. Tatum*, 408 U.S. 1 (1972), *reh'g denied*, 409 U.S. 901 (1972)). Thus, "the test is whether . . . [the defendant's] challenged activities are likely to chill the exercise of constitutionally protected speech." *McBride*, 1994 WL 396143, *4.

Deardorff contends that Baker violated his free speech rights when he told Baker to relocate to the east side of Blakenbaker and forced him to do so. On the other hand, Louisville Metro asserts that Deardorff voluntarily moved to the east side and that no constitutional violation occurred, because Baker only informed Deardorff of the permit requirement and did not threaten Deardorff with arrest or citation. We agree with Louisville Metro.

The Supreme Court has noted that a threat of arrest is enough to chill a person's free speech rights. *See City of Houston, Texas v. Hill*, 482 U.S. 451, 459 n.7, 107 S.Ct. 2502, 2508

n.7, 96 L.Ed.2d 398 (1987); *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). However, no threat of arrest or other consequence was made by Baker. In fact, it appears that the interactions between Deardorff and Baker merely amounted to a conversation. We do not believe that a police officer's informing a citizen that he would be engaging in illegal activity is sufficient to have a chilling effect. And, although Deardorff may have sincerely believed that he was being forced to move, allegations of a subjective chill are not enough to make out a First Amendment violation. *See Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972); *Nat'l Rifle Ass'n of America v. Magaw*, 133 F.3d 272, 294 (1997). Therefore, we will dismiss Count I of Deardorff's complaint.

### Count II

Count II alleges that Louisville Metro violated Deardorff's right to be free from government establishment of religion when Baker showed favoritism towards Southeast by making Deardorff move to the east side of Blakenbaker, where Deardorff would not be visible to vehicles entering Southeast's compound. The test for whether a particular government action violates the Establishment Clause was set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under *Lemon*, the court must consider (1) whether the action had a secular purpose, (2) whether its principal or primary effect neither advanced nor inhibited religion, and (3) whether it fostered an excessive government entanglement with religion. *See Lemon*, 403 U.S. at 612-13, 91 S.Ct. at 2111; *see also Adland v. Russ*, 307 F.3d 471, 479 (6th Cir. 2002).

In this instance, however, we are not even able to reach the *Lemon* test. The only connections to religion Deardorff asserts are that (a) his chosen forum was a sidewalk in front of Southeast, and (2) Baker's telephone phone call was to someone with authority at Southeast. Moreover, Deardorff fails to cite any authority supporting his proposition that his relocation and


Baker's telephone call constitute a government endorsement of religion. As such, we will dismiss Count II of Deardorff's complaint.

### Count III

Count III of Deardorff's complaint, which alleges that he was unreasonably and unconstitutionally seized when he submitted to Baker's order to cross to the east side of Blakenbaker, must also be dismissed. The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. However, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained . . . . As long as the person remains free to . . . walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 553-54, 100 S.Ct. 1870-1877, 64 L.Ed.2d 497 (1980). Nowhere has Deardorff alleged that Baker somehow impeded his ability to leave the area. On the contrary, Deardorff was always free to leave, but chose to remain and protest on the east side of Blakenbaker to avoid potentially violating the law.

### Count IV

Count IV claims municipal liability for Baker's acts. In his complaint, Deardorff alleged that "Defendant, Louisville Metro, by failing to train its police officers, and by failing to develop appropriate policies and procedures concerning constitutionally protected demonstrations, was deliberately indifferent to the federal and state constitutional rights implicated herein, and such deliberate indifference was the proximate cause of the constitutional violations set forth in Counts I-III." Because all other counts have failed, Count VI must also be dismissed.

Having found all counts to fail, we will grant Louisville Metro's motion to dismiss. A separate order will be entered this date in accordance with this opinion.