UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ERIC DEARDORFF                                                      PLAINTIFF

v.                                             CIVIL ACTION NO. 3:06CV-63-S

LOUISVILLE/JEFFERSON COUNTY                                     DEFENDANTS
METRO GOVERNMENT, et al.

## MEMORANDUM OPINION

This matter is before the Court on the motion of the plaintiff, Eric Deardorff ("Deardorff"),

to reconsider our Memorandum Opinion and Order (DNs 6 & 7) dismissing this action. Specifically,

Deardorff asks the Court to reinstate his First Amendment and municipal liability claims pursuant

to Fed. R. Civ. P. 59(e). For the reasons stated herein, we must deny Deardorff's Motion.

## BACKGROUND

On February 6, 2005, Deardorff, an animal rights activist and supporter of People for Ethical

Treatment of Animals (PETA), and another person, Joe Hinkle ("Hinkle"), went to 920 Blankenbaker

Parkway ("Blankenbaker") in Louisville, Kentucky intending to demonstrate in front of Southeast

Christian Church ("Southeast") against the alleged animal abuse by Kentucky Fried Chicken, a

division of Yum! Brands, Inc. ("Yum!"). Deardorff believed that Yum! executives attended

Southeast and wanted these executives to see his protest.

After Deardorff and Hinkle took up position on a sidewalk on the west side of Blankenbaker,

they were approached by Louisville Metro Police Officer and defendant Victor Baker ("Baker").

Baker advised Deardorff and Hinkle that they were not allowed to protest at their chosen location

because they did not have a permit. He told Deardorff and Hinkle that they would have to move to

the east side of Blankenbaker.

When Deardorff and Hinkle responded that they were on public property and had a

constitutional right to be there, Baker contacted someone at Southeast who informed him that

protesters required a permit to demonstrate on the west side of Blankenbaker and that an agreement to this effect had been reached with previous protesters. Following Baker's reiteration to Deardorff and Hinkle that they needed a permit, Deardorff and Hinkle relocated to the east side of Blakenbaker.

Following this incident, Deardorff filed the case *sub judice* against Louisville/Jefferson County Metro Government ("Louisville Metro") and Baker asserting four causes of action under 42 U.S.C. § 1983:

| | |
|---|---|
| Count I: | Suppression of Free Speech |
| Count II: | Establishment of Religion |
| Count III: | Unreasonable Seizure |
| Count IV: | Municipal Liability |

On October 23, 2006 we granted Louisville Metro's Motion to Dismiss and dismissed all claims against Louisville Metro and Baker. We now examine whether our dismissal of Baker's First Amendment claim was in error.

## ANALYSIS

In order to make a valid First Amendment claim a plaintiff must allege facts sufficient to demonstrate that the defendant's actions chilled his speech. *McBride v. Village of Michiana*, 30 F.3d 133, 1994 WL 396143, *4 (6th Cir. July 28, 1994) (citing *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), *reh'g denied*, 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972)). To determine whether these facts have been sufficiently alleged, a court examines the situation both objectively and subjectively and questions: (1) whether an objective, reasonable person would have found the government's actions to deter speech, and (2) whether the plaintiff's speech was actually deterred. *See Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ."), *reh'g denied*, 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972). Here, there is no dispute that Deardorff was actually deterred from

protesting on the west side of Blakenbaker. However, more is needed to find that an objective, reasonable person in Deardorff's position would have found that the officer's words amounted to a chilling of speech, *i.e.*, an implicit threat of arrest or citation.

In our previous Memorandum Opinion we explained that Deardorff had failed to set forth a First Amendment claim because he did not contend that Baker made any threat of arrest or other consequence. We reasoned that the interaction between Deardorff and Baker amounted to a mere conversation. Deardorff argues that our Opinion was based on whether any *express* threat had been made and now urges that Baker's law enforcement authority coupled with his having told Deardorff that without a permit Deardorff would need to protest across the street must be taken as an *implicit* threat of arrest.

Although an implicit threat of arrest or citation is sufficient to chill speech, we reiterate that Baker made no threat, thinly veiled or otherwise. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68, 83 S.Ct. 631, 638, 9 L.Ed.2d 584 (1963). In the absence of an explicit or thinly veiled threat, Deardorff essentially invites this Court to hold that anytime a police officer tells a citizen what to or not do, an implicit threat of arrest or citation must *ipso facto* exist.

We decline, and instead find that a police officer must offer some form of consequence before his words or actions become implicitly threatening. For instance, in this case if Baker had said something to the effect of "If you don't move, I may be forced to take action," or if Baker had reached for his handcuffs or citation pad as he told Deardorff to move to the other side of the street, an implicit threat of arrest might be found.

Deardorff *imagines* that not moving would have resulted in his arrest or citation, but this is merely one possibility out of several. Upon Deardorff's refusal to move, it is also possible that Baker could have left the scene. The point is, Baker communicated nothing to Deardorff, by words or actions, as to what would happen if Baker did not move. Deardorff's allegation that he was "forced"

- 3 -

to move is his own conclusion. Without alleging that Baker evinced some sort of verbal or non-verbal consequence if he did not move, Deardorff's First Amendment claim must fail.

Furthermore, *Bantam Books, Inc. v. Sullivan*, the Supreme Court case cited by Deardorff in support of his arguments, is distinguishable on the facts. In *Bantam Books*, Rhode Island's legislature created a commission (RICEMY) to determine what publications it considered obscene and unsuitable for sale to minors. *Bantam Books,* 372 U.S. at 59. RICEMY sent out notices to publishers informing them that RICEMY had dubbed certain books and magazines "obscene." *Id.* at 62. In these notices RICEMY stated that the obscene materials should not be distributed to minors, that police chiefs had been notified of the list of obscene materials, and that the attorney general would act for the commission in cases of non-compliance. *Id.* The Supreme Court explained that RICEMY's notices contained thinly veiled threats of criminal proceedings that chilled speech. *Id.* at 65. However, *Bantam Books* does not control the case at hand, since in *Bantam Books* RICEMY provided a clear consequence: if you do not comply, the attorney general will act. Again, in the case at hand, there was no offer of consequence.

Because we must reject Deardorff's request to reinstate his First Amendment claim, we must also decline to reinstate his municipal liability claim. Without an underlying violation, the municipal liability claim cannot survive. A separate order will be entered this date in accordance with this opinion.

- 4 -